UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DEBORAH DODD,**

        **Plaintiff,**

vs.                                       Case No.  8:04-cv-1717-T-MSS

**JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____/

**ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying claims for disability insurance benefits and supplemental security income under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I.    BACKGROUND**

    **A.  Procedural History**

Plaintiff applied for a period of disability, disability benefits and Supplemental

1

Security Income Benefits on May 1, 2002 (T. 45-47; 247-48) alleging an onset of disability on March 31, 2002, due to Hepatitis C, depression, and related disorders. (T. 267, 270-280). Her application's were denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on December 15, 2003, before Administrative Law Judge, Richard E. Ouellette (the "ALJ"). (T. 260-86). During that hearing, Mr. Gerald Wili testified in his capacity as a Vocational Expert ("VE"). In a decision dated March 22, 2004, the ALJ denied Plaintiff's claims for benefits. (T. 8-19). Appeals Council denied review of the ALJ decision on May 29, 2004. (T. 3-5). This action for judicial review ensued.

**B.   Medical History**

Plaintiff's medical history is set forth in the ALJ decision. By way of summary, Plaintiff complained of Hepatitis C, depression, anxiety, insomnia, extreme tiredness and forgetfulness, nightmares, crying jags, chronic bronchitis and tendonitis in her arms. She had a background history of drug and alcohol abuse and had attempted suicide by cutting her wrist after using alcohol and Valium.

At the ALJ hearing, Plaintiff presented the ALJ with medical records from her treating and examining physicians. After considering the evidence, the ALJ found that although Plaintiff's Hepatitis C, depression and substance abuse were "severe," they did not meet one of the listed impairments in Appendix 1, subpart P, Regulation No. 4. (T. 18, Finding No. 3).

The ALJ stated after consideration of the record, including Plaintiff's testimony, which the ALJ found not to be wholly credible, that Plaintiff retained the residual

2

functioning capacity to perform "light work," with an occasional limitation for coping with work stress, concentrating on tasks assigned, bending, and stooping. He found further that Plaintiff is capable of performing simple, routine tasks without constant contact with the public. (T. 18, Finding No. 6). In addition, the ALJ found that Plaintiff had only moderate restrictions of daily living activities, social functioning and concentration, as well as, one or two episodes of decompensation. (T. 14).

As such the ALJ also found that Plaintiff retained the residual functioning capacity ("RFC") to perform light work activity and could perform her past relevant work as a presser operator. (T. 18, Finding No. 6). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Act at any time through the date of decision.

## II.    STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law de novo. See Davis v.

Shalala, 985 F.2d 528, 531 (11th Cir. 1993).  If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard.  See McDaniel v. Bowen, 800 F.2d 1026, 1029-1030 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983).  If the reviewing court is unable to determine from the Commissioner's decisions that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Against this standard, Plaintiff asserts two points of error: 1) that the ALJ failed to properly credit the actual opinions of Plaintiff's treating and examining physicians regarding her mental limitations and 2) that the ALJ improperly discredited Plaintiff's credibility on the basis of factual inaccuracies.

For the reasons that follow, the decision of the Commissioner is **REVERSED**.

### III.   DISCUSSION

#### A.   Whether the ALJ failed to credit the opinions of Plaintiff's treating and examining physicians regarding her mental limitations

Plaintiff claims that the ALJ erred in failing to credit the objective opinions of her treating and examining physicians regarding her mental limitations. Specifically, Plaintiff challenges as inaccurate the ALJ's finding that treatment notes from Peace River Center for Personal Development ("Peace River Center") "repeatedly show that the claimant's GAF scores were in the normal range around 68 (see Ex. 10F/4-7, 9 and 11F/1), indicating **some mild symptoms or some difficulty** . . . but generally functioning pretty well with some meaningful interpersonal relationships." (T. 16)

4

(emphasis added). Plaintiff contends that to reach this finding the ALJ improperly discounted or misconstrued the opinion of treating sources and relied instead on the opinions of examining and non-examining medical sources. Defendant responds that substantial evidence supports the ALJ's decision.

With regard to Plaintiff's claim, the law is well established. The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847 F.2d at 703. Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987).

This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of

5

their patients and in that capacity are best qualified to assess the nature of the claimed disability. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Plaintiff was a patient at Peace River Center from May 30, 2002, until September 22, 2003. (T. 204-232). The Commissioner acknowledged that Peace River Center is a "treating source." (Comm. Br. at 10). Plaintiff began receiving treatment from Peace River Center, in the Center Crisis Stabilization Unit, after she attempted to commit suicide on May 25, 2002. (T. 95). While a patient at Peace River Center, Plaintiff was diagnosed with, among other things, major recurrent depressive disorder and prescribed Prozac and was scheduled for continued therapy. (T. 218 and 219).

During the sixteen months that Plaintiff was treated at Peace River Center, Plaintiff's Global Assessment of Function or "GAF" score ranged between 50 initially to a high of 68. (T. 204-232). GAF is the standard method used for assessing a person's overall level of psychosocial functioning. A GAF score reflects a physician's judgment about a patient's current, psychological, social and occupational functioning. The physician's rating of the patient is expressed as a number on a scale ranging from 1 to 90, with ratings of 1-10 indicating severe impairment and ratings of 81-90 indicating superior functioning. A GAF score of 50 or below indicates serious symptoms or any serious impairment in social, occupational or school functioning. (See, e.g., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)). A GAF score of 60 indicates "moderate symptoms" (e.g. flat affect and circumstantial speech, occasional panic attacks) or

6

moderate difficulties in social, occupational or social functioning (e.g., few friends, conflicts with peers or coworkers). Id.

The records from Peace River Center, considered in detail, reflect that Plaintiff exhibited significant symptoms with no extended periods of relief. This detailed review indicates that Plaintiff's GAF scores during her sixteen months of treatment ranged as follows: 50 on June 5, 2002 (T. 218); 60 on June 19, 2002 (mood described as "down," affect "blurred," continued use of Prozac recommended) (T. 216); 55 on August 5, 2002 (Plaintiff described as "angry" and "depressed")(T. 212); 60 on September 5, 2002 (note in chart reads "refer to neurology for memory problems")(T. 210); 68 on November 7, 2002 (notes read "add Zoloft")(T. 209); 68 on December 23, 2002 (T. 208); 55 on March 31, 2003 (notes say that highest GAF in past year is 50 and the restarting of individual therapy is recommended);[1] a GAF of 50 is noted on June 26, 2003, but it appears in the box marked "Highest [GAF] in Past Year" (notes under "Discharge" read that Plaintiff will be discharged when she has remained stable for at least 6 months) (T. 224); and, 65 on September 22, 2003 (T. 223).

Thus, Plaintiff, in fact, received a GAF score of 68 for only a short period of time between November 7 and December 23, 2002. For the remaining time, her GAF was recorded at 50 to 55, which would indicate, as noted by Plaintiff, in her brief, that she suffered recurrent and significant symptoms with increases and

---

[1]Also dated March 31, 2002, is an entry listing Plaintiff's GAF as 60 or 65, the writing is somewhat illegible (under the Assessment section of the form the box "Worsened" is checked) (T. 207)

7

changes in medications and was unable to sustain for a significant period of time relief from symptoms. (Pl. Br. at 12). Even during the short periods of improvement her treating sources did not consider her well enough to be discharged from their care. (T. 204-232). This is directly contrary to the ALJ's generalization that Plaintiff's GAF score indicated only "mild symptoms" and that she generally functioned "pretty well."

The ALJ's ultimate determination that Plaintiff only suffered from "moderate limitations in concentration" to the extent it was based on the report of the examining, non-treating physician, Dr. Theodore Williams, was also in error. The Department of Health - Office of Disability Determinations referred Plaintiff to Dr. Williams for an evaluation to help the Department determine eligibility for disability benefits.  Dr. Williams saw Plaintiff only once, on October 29, 2002. (T. 125-129).

The ALJ stated: "I find that treatment notes from Peace River Center and Dr. Williams' evaluation indicate only a moderate limitation." (T. 14).  However, as Plaintiff points out, Dr. Williams' evaluation supports a "marked," not a merely "moderate" impairment in concentration. Dr. Williams administered the Wechsler Memory Scale - 3rd Edition (WMS-III) test to Plaintiff, with Plaintiff testing as functioning in the extremely low ranges on various types of memory.  Dr. William's findings show that Plaintiff's percentile scores on the eight types of memory tests conducted ranged from .2% to a high of 5%.  (T. 128).  Such testing results constitute "objective medical evidence" and support Plaintiff's contention that she suffered from marked limitations in concentration.

8

Dr. Eeltink, the state agency's own psychologist reviewed Plaintiff's records and prepared a report dated December 9, 2002, in which he concluded, as did Dr. Williams and the Peace River Center treating sources, that Plaintiff had "marked difficulties" in maintaining concentration, persistence or pace. (T. 160). The ALJ rejected this finding as well. (T. 14).

The only finding of a "moderate" concentration problem was rendered by the other non-examining state psychologist, Dr. Eric Weiner, whose report is dated July 30, 2002. (T. 164-177, at T. 174). Thus, the opinion of a non-examining, non-treating doctor is the only record support for the ALJ's finding that Plaintiff suffered from a "moderate limitation in concentration." As noted above, "the opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).

Where the ALJ fails to provide sufficient good cause to reject the opinions of a treating physician, those opinions must be accepted as true. MacGregor v. Bowen, 786 F.2d 1050, 1058 (11th Cir. 1986). At the ALJ hearing, Plaintiff's counsel questioned the VE about the potential impact of a finding of marked limitation in concentration, persistence and pace. Thus, he inquired, "[i]f the person had marked difficulties in maintaining concentration, persistence or pace, would it affect her ability to do these jobs full time?" (T. 285). The VE responded, " . . .yeah, it means she couldn't do simple repetitive work. . ." (T. 285).

9

On the basis of this testimony the Court is compelled to find that accepting Plaintiff's treating sources as correct would require a finding of disability. As such, the Court finds that the ALJ's decision is not supported by substantial evidence and orders it **REVERSED** for a finding of disability and a determination of onset and duration of the disability and a calculation of benefits.

### B. Whether the ALJ improperly discredited Plaintiff's credibility on the basis of factual error

Plaintiff's second contention is that the ALJ improperly discredited Plaintiff's credibility on the basis of factual error. The Commissioner's memorandum, while generally discussing Plaintiff's credibility, does not specifically address this issue as raised by Plaintiff except to note that "[t]he ALJ did not find that drug or alcohol abuse was a material factor to a finding of disability." (Comm. Br. at 4).

Credibility determinations are "peculiarly the province of the finder of fact." St. Clair. v. Chater, 963 F. Supp. 984, 988-89 (D. Kan. 1997) (citing Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995)). Credibility determinations are not for the Court but for the ALJ, who observed the claimant at the hearing, to decide upon. DiVirgilio v. Apfel, 21 F. Supp. 2d 76, 82 (D. Mass. 1988)(internal citations omitted).

Accordingly, an ALJ's determination as to credibility is entitled to deference. Thiffield v. Callaghan, 9 F. Supp 2d. 75, 80 (D. Mass. 1998). The ALJ's credibility determinations will, therefore, not be disturbed unless they are "patently wrong." Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Because the ALJ is "optimally positioned to observe and assess witness credibility," the Court may overturn his credibility determination only where there is an obvious absence of credible supportive evidence. Waymire v. Apfel,

106 F. Supp. 2d 1208, 1213 (D. Kan. 2000). This Court must consider "the entire record and take account of the evidence in the record which detracts from the evidence relied upon by the [Secretary]." Foote v. Chater, 67 F.3d 1553, 1561 (citing Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986)(internal citations omitted).

Notwithstanding this level of deference, an ALJ's credibility determination is subject to reversal only if it is not supported by substantial evidence. Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

In the credibility section of his opinion, the ALJ found that Plaintiff "is capable of performing much more than she alleges." In reaching this decision, the ALJ cited to "inconsistencies" in Plaintiff's testimony. The most significant "inconsistency" cited was the ALJ's statement that "[d]uring May 2002, the claimant was admitted to the hospital after attempting suicide by cutting her wrists and consuming alcohol and Valium. . . .The claimant reported that this was the last time she drank alcohol. However, on February 25, 2003. . . the claimant's alcohol level was .210, which clearly contradicts her statement under oath." (T. 16).

The record demonstrates that the ALJ used an inaccurate factual conclusion regarding Plaintiff's last consumption of alcohol to discredit Plaintiff's credibility. The ALJ's statement as to Plaintiff's alcohol consumption indicates a misreading of the medical report at T. 197, which is part of the Emergency Room records dated February 25, 2003, from Lakeland Regional Medical Center. (Ex. 9F, T. 192-203). That medical report is a lab result showing, among other things, alcohol levels for both February 25, 2003 and May 25, 2002. Contrary to the ALJ's statement, the

11

.210 reading was for the 2002 date not the February 2003 date. (T. 197). Plaintiff called the ALJ's attention to this mistake during the ALJ hearing. (T. 272-273). At that time, the ALJ acknowledged his error saying "[t]hank you, you are right, it does say May 25, 2002." (T. 273). Despite this acknowledgment, three months later the ALJ repeated the error in his decision of March 22, 2004. (T. 16).

As this error is the primary basis for the ALJ's credibility determination in this case, the credibility determination must be set aside, as well. Thus an independent basis exists for reversal of the ALJ's decision here.

### IV.   CONCLUSION

For the foregoing reasons, the Undersigned finds that the Commissioner's decision is not supported by substantial evidence. Thus, it is **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED** to the Commissioner for a determination of the onset of Plaintiff's disability, the duration of the disability and a calculation of benefits. The Court enters judgment in favor of Plaintiff and directs the Clerk to enter judgment pursuant to Rule 58 and to **CLOSE** this case.

**DONE** and **ORDERED** on this 29th day of September 2005.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record

12